593 So.2d 1079 (1992)
MORSE OPERATIONS, Inc., d/b/a Lauderhill Leasing, a Florida corporation, Appellant,
v.
SUPERIOR RENT-A-CAR, INC., etc., Appellee.
No. 91-2257.
District Court of Appeal of Florida, Fifth District.
January 22, 1992.
Les Stracher, of Stracher & Harmon, P.A., Plantation, and Edna L. Caruso, P.A., West Palm Beach, for appellant.
Steven L. Brannock and Robert J. Kline, Holland & Knight, Tampa, for appellee.
W. SHARP, Judge.
Morse Operations, Inc., d/b/a Lauderhill Leasing, appeals from a non-final order denying its right to possession of some 1,150 automobiles, after a show cause hearing pursuant to sections 78.065 and 78.067, Florida Statutes (1989). The trial court ruled that Morse failed to establish "with reasonable probability" that it was entitled to possession of the automobiles pending final adjudication of the claims between Morse and Superior Rent-A-Car, Inc., the sublessee of the cars. We reverse.
At the hearing the parties agreed to the essential facts relating to which one of them was entitled to possession. Morse was the owner of the cars. It had directly leased other cars to Superior. For business reasons, it refused to lease more cars to Superior but it agreed to lease the subject 1,150 allotment of cars to Lease-A-Fleet (LAF) pursuant to a Master Lease Agreement, and Superior could then sublease them from LAF.
Accordingly a Master Lease Agreement was entered into by Morse and LAF in 1990, and a sublease, evidenced only by informal letters dated December 1990 and January 1991, was entered into by Superior and LAF for these cars. The sublease required monthly rental payments on the cars but there was no express provision concerning default and repossession by LAF. The bulk of the cars were delivered to Superior by LAF in January and February *1080 of 1991, although some were delivered in March.
In April of 1991, LAF defaulted under its Master Lease Agreement with Morse, and filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Morse obtained an order from the bankruptcy court which allowed it to recover its cars under the Master Lease with LAF and enforce any rights LAF had under its sublease with Superior to collect rents and to recover the cars in the event of a default.
Although Superior had been current in its rental payments to LAF until LAF filed for bankruptcy protection under Chapter 11, after May of 1991, Superior stopped making any rental payments to anyone. Morse put Superior on notice it was terminating Superior's right of possession under the Master Lease Agreement and the sublease and demanded return of the cars. It also demanded that Superior pay the sublease rental payments directly to it, pursuant to the bankruptcy court order and assignment. Superior refused to pay Morse rent on the cars under the sublease and it refused to return them. It has continued to use the cars in its rental car business.
In July of 1991, Morse filed replevin suits against Superior to obtain possession of the cars. Suits filed in other Florida counties were abated, pending the outcome of this action, filed in Orange County, Florida. Morse elected to proceed pursuant to sections 78.065 and 78.067. They require the holding of a hearing on a show cause order (under certain circumstances). The plaintiff need not file a bond, unlike the prejudgment replevin procedure provided for in section 78.068.
At the October, 1991 show cause hearing, the trial court took testimony of witnesses for both parties, and examined documentary evidence and discovery documents and depositions. It concluded that the business relationship between the parties was too complex to unravel in the replevin hearing, and that possession of the cars should remain with Superior until the disputes between the parties could be sorted out at the final hearing. Both parties stated the right of possession issue would be resolved in January of 1992 because Superior's sublease would terminate at that time. Morse took a non-final appeal to this court.[1]
We granted Morse's motion to expedite this appeal in November but due to the parties' motions to expand the briefs, and time spans to write briefs under the appellate rule, the matter was not perfected for review until mid-December. Initially this court issued a show cause order as to whether the matter had become moot since the subleases allegedly expired in January. We have received assurances from Morse that Superior is still refusing to return the cars. Thus, we issue this opinion as quickly as possible.
Superior's sole justification for retaining possession of the cars is that it has a set-off or counterclaim against LAF because LAF breached a later alleged oral agreement to lease approximately 3,000 additional cars to Superior. LAF's failure to do so in April of 1991 and its present inability to do so because of bankruptcy allegedly damaged Superior's ability to obtain the proper "mix" of new cars for its rental fleet. Returning Morse's cars without obtaining new ones from LAF would have put it out of business. Superior now asserts a substantial damage claim against LAF for breach of the oral contract. However, Superior did not claim that Morse was in any way involved in LAF's oral agreement to lease the 3,000 additional cars, nor that the later agreement was in any way related to the sublease for the 1,150 cars involved in this suit.
Under these essentially undisputed facts, we think that Morse clearly established with "reasonable probability" that it was entitled to possession of the 1,150 cars subleased to Superior. Pursuant to its Master Lease Agreement with LAF, Morse was entitled to default LAF for failure to pay rent on the cars and for breach of numerous other lease provisions, including bankruptcy. Pursuant to the bankruptcy *1081 court's order, Morse was empowered to replevy the cars from LAF. Under normal circumstances, Superior's rights to possess the cars would collapse under the sublease when LAF's rights were terminated under the Master Lease Agreement.
However, giving the trial judge the presumption of correctness, there were some facts developed by Superior at the hearing which may have established that Morse directed Superior to sublease the cars through LAF and thus approved it and became bound to honor Superior's rights under the sublease. Assuming (without holding that was the case here), that Morse was "subject" to the sublease between LAF and Superior and stands in LAF's "shoes", Superior still failed to establish any right to continued possession of the 1,150 cars against LAF, since it was admittedly in default for failure to pay any rent on the cars since May of 1991. See Waite Aircraft Corp. v. Ford Motor Credit Corp., 430 So.2d 1003 (Fla. 4th DCA 1983).
Superior's sole justification for so doing was LAF's alleged breach of a later oral agreement to lease Superior an additional 3,000 cars. This potential damage claim does not relate to the 1,150 cars involved in this suit, nor to LAF's or Morse's right to possess these cars after default under the sublease. As such, it is legally insufficient to defeat a replevin action relating to these automobiles. See First New England Financial Corp. v. Woffard, 421 So.2d 590 (Fla. 5th DCA 1982); Southside Atlantic Bank v. Lewis, 174 So.2d 470 (Fla. 1st DCA 1965). A defense to a replevin suit must defeat the plaintiff's right to immediate possession. Stokes v. Humphries, 68 So. 448 (Fla. 1915). Here, Superior's defense missed that mark.
Accordingly, we reverse the non-final order entered below and direct that the trial court immediately issue a writ of replevin pursuant to section 78.067. Superior may obtain a stay of the order if it files the required bond described in section 78.067(2). Because of the expedited nature of this cause, we will not entertain any motions for rehearing or clarification, and our mandate shall issue immediately.
REVERSED and REMANDED.
GOSHORN, C.J., and PETERSON, J., concur.
NOTES
[1] Fla.R.App.P. 9.130.